Our next case for oral argument this morning is appeal number 24-2799 Zemlick v. Burkhart. Mr. Ellis, whenever you're ready, please. Zemlick v. Burkhart Good morning. So he was returned to the Hancock County Jail December 13th. Over the course of the next 13 or so days, he developed a very serious infection that led to him being re-hospitalized with possible sepsis. There are some photographs along the way showing how gruesome that infection progressed over time. There are two individual defendants that we are pursuing on appeal. One is the assistant jail commander, Matthew Boots. He had an office that was across from the cell in which Mr. Zemlick had been held during that recovery period. During that period of time, Mr. Zemlick was talking with Lieutenant Boots every day that he was there, which is at least seven of the days, the 13 days, as that infection progressed. It's undisputed that Mr. Zemlick had complained that he was receiving inadequate care with regards to his wound, whether or not Mr. Boots was able to make his own independent evaluation. Evidence is there about the specifics that Mr. Zemlick allegedly said to Boots? Because I looked through the record and while even your client testified that he made some general grumblings or general complaints, I didn't see anything with any kind of specificity that would have put Boots on notice about his particular complaints. I think the record does not contain specific statements to the extent of, I told Lieutenant Boots on December 16th that my wounds weren't getting changed. I mean with the date specificity, but I didn't see anything that Boots said, oh yes, I told him that Nurse Holmes was not caring for my wound. I told him that the infection was getting worse. I didn't see anything other than just general statements that I wasn't happy with the care. Mr. Zemlick was complaining that he wasn't receiving the care that was ordered. And if the Corporate Review of Medical Records, you'd see there's only five charts, I believe that occurred over the course of that 13 day period. Not all of the care that was ordered was being provided. Here's my concern as to Boots, that under the law and for deliberate indifference, he had to be on notice. At the same time, Your Honor, as... He didn't have an obligation to go look at the medical records to put him on notice. So your argument has been that Mr. Zemlick put him on notice. And just to focus you in on where my concern is, I don't see specificity in the record as to Boots of putting him on notice about the particular medical concerns that your client had. I think it's accurate, Your Honor, to say there's nothing specific in the record whereby Mr. Zemlick said I was not receiving every single wound change that I was ordered to receive or that I wasn't receiving the pain medication. That does not end the record. Or that my wounds are infected and they're not getting care. I mean, even something more general like that. It was his testimony was I wasn't, I told him I wasn't happy with care, period. He told him that he told him what was going on every day as it happened. And Mr. Zemlick did testify about the things that were happening along the course of his worsening infection, including becoming gray and clammy, having pain, having discharge from his pores and from the wound. Some of these things may well have been invisible to Lieutenant Boots. Other things are going to have been visible to him, including these last several days when Mr. Zemlick was not able to get up and move around because he was in so much pain and his coloration had changed. These are things that would be obviously apparent to any lay person that Mr. Zemlick was doing worse over the course of those, that two week period. And it's undisputed, the court, the district court agreed, opposing parties agree that there were complaints made. And for the purposes of due process for jail staff, it's not particularly important what they know about the condition because they're not themselves able to make medical determinations. The purpose of- It is important in a deliberate indifference as to medical clear where you have medical staff at the jail that the officer knows is daily seeing the client. So I would agree with your maybe initial statement as to due process, but on the specifics of a claim like this, I think it is important and our case law says that. Well, I think that between the fact that it's undisputed that he had complained about the care he was receiving and it's physically obvious, even if his wounds couldn't be seen, that any person who would be hearing from Mr. Zemlick about his worsening condition and actually observing his worsening condition, the wounds themselves, notwithstanding, would know this isn't just a person grumbling about not receiving aspirin. There's something happening here. And the action that's required of Lieutenant Boots and other jail officers is not to determine whether or not appropriate medical care is being given, but simply to take the complaint from the detainee to medical staff and receive some kind of verification that appropriate care has been provided or that appropriate care will be provided. It's an extremely low burden on the part of the jail staff. And I want to be clear, Mr. Zemlick is not arguing that Lieutenant Boots would have had any obligation to, you know, hear back from medical staff and then be able to make a determination about whether their judgment is correct. It made their cases that the court has heard before, such as Miranda and Greenough, in which jail officers simply go to medical, relay the concern, receive assurances that care will be given, and they have discharged their duty. And that may well have been all that Lieutenant Boots had to do in this case. With regard to Lieutenant Boots, you are challenging his conduct or his knowledge after the first surgery. Do you have any claims against Mr. Boots with regard to any actions or inactions after the second surgery? Your Honor, in earlier stages of the case, there were live claims that related to that post-second surgery period. For the purposes of this appeal, we are really focused on these 13 days after the first surgery and the rehospitalization. So the other issue here that was overlooked by the district court with regards to Lieutenant Boots is, in citing to the Spencer case, there was an extensive record that had been generated. And this is the source of this criticism as to specificity. In that case, the plaintiff had a relatively minor medical condition, had submitted complaints over a period of several months, and they hadn't been properly addressed. In Mr. Zemlich's case, that simply wasn't a possible course of action. Over the course of 13 days, he went from a fresh surgery to possible sepsis. He was in a cell where he didn't have access to these medical kiosks, so he wasn't able to submit a health care request form like he might have been able to do in other contexts. He's solely dependent on jail officers responding to him when he complains, and also medical staff providing appropriate care. With regards to Corporal Schmidt, he was the officer in charge on December 26th, the day that Mr. Zemlich was ultimately returned to the hospital. Corporal Schmidt had an obligation to do something to immediately return. Didn't Nurse Holmes indicate to Schmidt that the transport could be scheduled? That is her testimony. Mr. Zemlich's testimony about that exchange is that she told Corporal Schmidt that Mr. Zemlich had to be returned to the hospital or he was going to die. So there's inconsistent testimony. It's entirely possible that a jury would hear from Mr. Zemlich and hear from the nurse and make a credibility determination that, indeed, that was the course of events. But at the time that she was giving that testimony, she herself was a defendant. And, you know, in this dispute, the court's going to have to resolve it in favor of Mr. Zemlich. His version of events is the one that exists on appeal. I didn't see you disputing that particular fact, though, that Judge Kohler just raised. I know you raised the argument that she said he has to go to the hospital or he's going to die. But she did testify, and it was in the 56.1s, that he could go by regular transport. And I didn't see that fact disputed. The testimony that Mr. Zemlich gave, it should be treated as inclusive of that entire encounter, which is Mr. Zemlich was taken out by the nurse. They told Corporal Schmidt that Mr. Zemlich needed to urgently be returned to the hospital or face death and then was sent back to the cell. So to the extent that the nurse is given inconsistent testimony and it's not entirely clear whether or not that actually was said at some other point in time, that's additional facts that would need to be developed at trial. The court shouldn't simply assume that one can slide that fact in light of Mr. Zemlich's testimony about what happened in that encounter. Do you have a hearsay problem with regard to what nurse Holm said she told to Schmidt that she relayed to Mr. Zemlich? No, Your Honor. In the first instance, it's an untimely argument that was raised on appeal by the appellee. But setting that aside, there are numerous potential exceptions, including a present sense impression that would overcome a hearsay objection. But more importantly, at the end of the day, it's not about whether or not it's true that Mr. Zemlich was actually going to die if he didn't go to the hospital. The purpose of that information is to show what did Corporal Schmidt know when he was making a decision about whether to summon immediate aid or send him back to the cell. And what Corporal Schmidt knew was there was a nurse saying that he would die if he didn't go to the hospital. Just to clarify too, you are not pursuing an individual claim against the sheriff, correct? No, Your Honor. We're not pursuing that on appeal. And you are into your rebuttal time, just in case you care. I'll reserve my time. Thank you, Your Honor. Thank you. Mr. Wilthon. Good morning. Good morning. May it please the court, Adam Wilthon for the appellees, Hancock County Sheriff Brad Burkhart, Matt Boots, and Luke Schmidt. This court should affirm the district court summary judgment order. Because the district court focused on the merits, this morning I'd like to emphasize three alternative and narrower grounds for this court to affirm. First is Officer Boots' non-liability under Supreme Court and circuit case law. Second is the officer's entitlement to qualified immunity, even if this court disagrees with the district court's decisions on the merits. And third is Mr. Zemlich's Monell claims are waived, both for failing to respond to the appellee's argument on this point in his reply brief, and for failing to comply with the district court's case management plan. So first I'd like to talk about Officer Boots' non-liability under Ashcroft v. Iqbal and this court's decision in Burks v. Ramish. Section 1983 liability is personal, can't be vicarious. So a defendant is responsible for their own actions, but not for what someone else does or fails to do. And a consequence of this rule is spelled out in cases like Ashcroft v. Iqbal, this court's decision in Burks, and also Estate of Miller v. Marbury, which all hold that inaction following the receipt of a complaint about someone else's conduct cannot be a source of liability. And that's the entire basis of Mr. Zemlich's claims against Officer Boots. Mr. Zemlich complained to Boots about the medical staff's apparent failure to follow the treatment plan, and Boots essentially brushed it off and let Mr. Zemlich address those complaints with the medical staff directly. Mr. Zemlich wants to impose vicarious liability, essentially, on Officer Boots for the medical staff's misdeeds. But if the Supreme Court found in Ashcroft v. Iqbal that Attorney General John Ashcroft had no responsibility for remedying the harsh conditions of confinement or the unconstitutional acts of subordinates, it's hard to see how Matt Boots, as a county jail officer, would have any greater obligation to investigate Mr. Zemlich's complaints. Mr. Zemlich's argument that Boots had a duty to respond to his complaints brings his claim within the scope of Burks and Iqbal, and that's exactly what this court held in Estate of Miller. But we also have a line of cases in the jail setting that generally an officer can rely on the medical treatment, but you can't turn a blind eye to an inmate in distress or to obvious incompetence on the part of the medical staff. Sure. Yeah, and I think here, Your Honor, there's been instances where far more egregious circumstances where this court has upheld that reliance on the deference to medical staff. For example, in King v. Kramer, more recently in McGee v. Parsano. And as you alluded to, there has to be either actual knowledge or reason to know. But if the, you know, given these circumstances where Mr. Zemlich was housed essentially in the medical wing, in the medical unit of the jail, he's got medical eyes on him at least twice a day. He's well positioned to receive care. The nurse, Nurse Holmes, testified and Mr. Zemlich testified, too, that any time Nurse Holmes worked, she changed those bandages. You know, there is the deference that Officer Boots is entitled to there. So along those lines of cases that we were talking about in Berks, they're not just limited to jail, excuse me, grievance officers or complaint examiners. In, for example, Arnett v. Webster, the jail guard knew the plaintiff wasn't receiving care, excuse me, getting his medication. In the state of Miller, the jail guard knew that the plaintiff's brain, about the plaintiff's brain tumor and lower bunk assignment. And most recently in Adams v. Regal, the director of investigation knew about the plaintiff's incorrect housing restrictions. And in Adams, this court said, I'm going to quote here, Berks rejects the notion that just because a jail officer is on notice of a constitutional violation, he necessarily has a duty to respond and may be held liable if he does not, regardless of whether those conditions are within his purview. So in all of these cases, the court, this court refused to engraft liability onto a defendant for a third party misconduct, even when the defendant knew about the underlying wrong. And so what these cases show is that the defendant must have not only knowledge, but also a responsibility to cure not the not the complaint, but the underlying issue. And relevant to Mr. Zemlich's claims against Officer Boots, this court in Berks said that a lay person's failure to tell the medical staff how to do its job cannot be deliberate indifference. So Berks and this and its progeny give this court a straightforward path to affirm summary judgment for Officer Boots without getting bogged down in the merits of qualified immunity. And I think that's also a good segue to discuss why Mr. Zemlich has failed to rebut Officer Boots's qualified immunity defense. Mr. Zemlich defines the clearly established right as the right to receive verification of complaints that he was receiving adequate care. But as we just discussed in cases like Berks, Estate of Miller, Arnett, Adams and even Iqbal, hold exactly the opposite. In Perez versus Fanoblio, a case that Mr. Zemlich cites, that was an Eighth Amendment case decided on a motion to dismiss posture. There, the plaintiff had an open and obvious gaping hand wound. He wasn't receiving any medical care. He had filed grievances. Unlike here, he wasn't housed in the medical wing of the jail. And we're talking about a delay of almost a year in getting the plaintiff there to a specialist. And there was no claim or discussion in that case that there was any deference to medical staff because there wasn't any medical treatment to begin with. Mr. Zemlich also cites Dixon versus Godinez. That's an Eighth Amendment case about the conditions of cold and freezing cell temperatures. Again, no mention there in that case about medical treatment or deference to medical staff. The other three cases he mentions are Miranda versus County of Lake, Greeno versus Daly and Arnett versus Webster. And so those were actually all decisions on the merits for county defendants. Qualified immunity wasn't even addressed. And I mention that because this court has openly questioned where a case is resolved on the merits for a defendant official, whether that could establish whether a right was clearly established in another case. So, at the very least, the cases Zemlich cites compared to the Iqbal and the Burks progeny show that there isn't a clearly established right. And that's why Officer Boots is entitled to qualified immunity. I'd like to move on to qualified immunity inquiry for Officer Schmidt, if I could. There, Mr. Zemlich frames the clearly established right as the right to receive prompt medical care for a serious infection. Well, that is far too general of a formulation under the Supreme Court in this circuit's precedence. But in the cases that Zemlich cites do not squarely govern the circumstances here. In Gill versus Reed, a case that Mr. Zemlich relies on, the defendant was a prison doctor who refused to provide the prescribed medication. In Lewis versus McLean, this court reversed summary judgment, finding that a reasonable jury could find a correctional officer in the face of a debilitating and immobilizing pain that an inmate received or had been experiencing, found that it could have been deliberate indifference and remanded the case for a jury. But Lewis is pretty distinguishable here, I believe, because there wasn't any sort of reliance on medical staff or deference to medical staff like there was here. The medical condition was far more obvious. You know, it wasn't a case where, as Mr. Zemlich was experiencing here, he had an infection on his stomach, but it was obscured by bandages and that sort of thing. And then finally, in Goodloe versus Sood, the court said inexplicable delays in responding to an inmate's serious medical condition can be deliberate indifference. Well, there was a three month delay in that case. We're not talking about an hour and a half like it was here. And it wasn't inexplicable. It was due to the end of a shift change. So for those reasons, we don't believe that the cases that Mr. Zemlich cited can overcome his burden in Officer Schmidt's entitlement to qualified immunity. What are we to make of Mr. Zemlich's testimony with regard to what he was told by Nurse Holmes that she told Professor Schmidt? Sure, Your Honor. Yeah, there I don't think there is any sort of factual dispute. We've raised an issue, obviously, in our brief, but even if the court disagrees with that, that it isn't hearsay, we will accept it for purposes of appeal that she actually said that. But that has to be viewed in the context of what else she said. We can't just cherry pick that statement. I mean, she said unequivocally in her deposition testimony that transport by county vehicle was sufficient, that Mr. Zemlich's situation was not emergent. He wasn't in, excuse me, dire circumstances. And so transport by county vehicle was sufficient. It would seem contradictory, you know, that on the one hand, Nurse Holmes would say that if he's diagnosed, we can die right now, versus, oh, you know what, we can just transport him in the ordinary court. I don't think that that might be contradictory or might be puzzling, I guess, in light of the other, Nurse Holmes' other testimony. But I think that's all the more reason to allow, at minimum, qualified immunity, because there was some of that conflicting information. And as we mentioned in our brief, Your Honor, if it was truly emergent, you would expect Nurse Holmes to raise some sort of issue or objection when Officer Schmidt apparently said, well, he can, you know, shift changes in an hour and a half or two hours, he can wait in the cell until then. There's no evidence that she did that. And there's no evidence that Officer Schmidt called an ambulance like he would have if the situation was emergent. And Nurse Holmes herself could have also called an ambulance, but she opted not to. The last thing I'd like to address this morning is Mr. Zemlich's Monell claim. Now, here we believe there's a case of double waiver. The first is because Mr. Zemlich's reply brief did not address the appellee's argument that he failed to comply with the district court's case management plan by including the Monell failure to train claim in his statement of claims. And so that amounts to waiver. Time and again, this court has held or said that an appellant's failure to respond to an appellee's argument in the appellant's reply brief amounts to waiver. But even putting that aside and looking at the kind of the second layer of the waiver here, which is the merits of our argument on this Monell issue, his failure to include that statement of, or excuse me, the failure to train claim in his statement of claims means that that claim was either abandoned, waived, or forfeited. And like many district courts in the country, the Southern District of Indiana has a case management plan, which requires plaintiffs to submit a specific list of claims to clarify the issues as summary judgment and trial approach. But in Mr. Zemlich's statement of claims, there really wasn't any mention of any failure to train claim. And there's countless- Is that inconsistent with our law that says even if a claim or a theory is not specifically pled, as long as you're on notice of it, there's no prejudice to allowing you to amend your complaint? Or is that inconsistent with Rule 8's plain statement directive? Well, Your Honor, I think there's two responses to that. The first is that this court gives the district court decisions on these issues considerable weight. Not if they conflict with the federal rules. I'm sorry? Not if they conflict with the federal rules. That's my concern. Right. And so we had, on summary judgment, we had basically taken Zemlich at his word that based on his statement of claims, he wasn't raising a failure to train claim. And we said, regardless, even if he is, here's all the reasons why it fails. And if Mr. Zemlich truly felt that he didn't get a fair shake at responding to that argument, he certainly could have moved for leave to file a surreply or get the last word on it because we had raised that issue. So for those reasons, we respectfully request this court affirm the district court summary judgment order. Thank you for your time. Thank you. Mr. Ellis, you have a little bit of time left for rebuttal. Thank you, Your Honor. So I think the most important thing to respond to here is this discussion about referring to and relying on medical staff. It is a significant feature of Apple's brief. As far as we have been able to determine, there's not any evidence that Lieutenant Boots had knowledge of the care that Mr. Zemlich was receiving to be able to rely. All we have is his knowledge that there were medical staff and Mr. Zemlich then was complaining that he was not receiving adequate care. So at that point in time, his obligation became go to the medical staff and find out is indeed Mr. Zemlich receiving adequate care. That's all that would need to be done. The rule that Apple is urging is that people like the Lieutenant Boots, who are much different than the Attorney General, was not sitting across from Iqbal in his cell. When people like that learn that there's an issue, they simply have to do nothing if they have any notion that there's medical care being provided. And that's going to put people like Mr. Zemlich, who have no way to submit a health care request form on their own, in a lot of danger. So if appellees can actually identify some form of reliance, perhaps that would change. But throughout the briefing, it's simply asserted without evidence. In terms of qualified immunity, we did address qualified immunity, both the District Court and in our reply brief on appeal. Our appellant's initial brief lays out quite significantly the governing case law, both as to Lieutenant Boots' failure to respond to Mr. Zemlich's complaints, as well as the test that this court has enunciated for dealing with claims of delay in providing medical care. Every case is going to be different, but the courts, through their case law, have identified that there are boundaries on these claims in a way that would put people like Lieutenant Boots and Corporal Schmidt on notice. With regards to Monell, we have identified in our brief why we believe Mr. Zemlich properly pleaded his claims and included additional information about the discovery process, why Mr. Zemlich's asserting in his statement of claims that the county failed to properly staff the jail. That should encompass the issues relating to training as well as quantity of officers. Thank you, Your Honor. Thank you, Mr. Ellis. Thanks to both counsel. The court will take the case under advice.